# STATE OF FLORIDA v PAYNE

## Case No. 85-917-MM-A-43

County Court, Monroe County, Florida

December 16, 1985

### APPEARANCES OF COUNSEL

**State Attorney's Office** for plaintiff.

**Joseph B. Wolkowsky** for defendant.

### OPINION OF THE COURT

J. ALLISON DeFOOR, II, County Judge.

### *ORDER OF RESTITUTION*

This cause, came to be heard upon a Hearing to Set Restitution pursuant to F.S. 775.089, subsequent to the defendant being found guilty of REMOVAL OR DESTRUCTION OF NATURAL FEATURES, CORAL & MARINE LIFE, in violation of F.A.C., Section 16d-2.11(2)(a)&(b) as prohibited by and in violation of F.S. 258.083(2).

The purpose of the hearing was to set the restitutionary values to be paid by the defendant in this cause to compensate the citizens of the

State of Florida for the value of the destruction inflicted upon the unique Coral Reef system in the State of Florida.

At the hearing testimony from Renate Skinner Ph.D., District Biologist for the Department of Natural Resources who was found to be an expert witness in biological oceanograph and Chris Olstad, found to be qualified as an expert in marine resource damage for the defense.[1] Neal Harmon, owner of the vessel in question, testified for the defense as to costs already incurred by the defendant in this cause.

## CONCLUSIONS OF LAW

A) Applicability of Restitution Statute to Case

A threshold consideration is whether or not restitution is legally mandated in a case such as the one before the Court. In 1984 the Florida Legislature enacted the "Victims Rights Act", which makes restitution "in all criminal cases" presumptive. F.S. 775.089(1)(a).[2] The state makes no distinction between cases in which the victim is a citizen, and cases in which the victim is the State of Florida and its citizens.

While the Act does not specifically define the State as a "victim" under the statute, it refers to victims as "aggrieved parties."[3] In this case the State may hold title to the damaged reef, but only as a public trust on behalf of its true owners. What, for the purposes of restitution, is the difference between stealing a cow belonging to one man, or poaching a lobster belonging to us all as citizens?

In sum the Court finds that the restitutionary statute applies, finding the State to be an aggrieved party. Restitution in a case such as this also effectuates the clear command of Florida's Constitution which provides that "It shall be the policy of the State to conserve and protect its natural resources and scenic beauty."[4]

The Court notes that the statute contains other interesting provisions, some of which shall be brought into play in this case. The Victim Rights Act provides that restitution may be either monetary or

---

[1] Pursuant to F.S. 90.702 (1984).

[2] The statute provides:
In addition to any punishment, the court *shall* order the defendant to make restitution to the victim for damage or loss caused directly or indirectly by the defendant's offense, unless it finds reasons not to order such restitution. (Emphasis added). F.S. 775.0890(1)(a) (1984).

[3] F.S. 775.089(1)(c) (1984).

[4] Art. II, Section 7, Fla. Const. (1984).

non-monetary,[5] and makes restitution a mandatory prerequisite to probation.[6] Though codified as a criminal statute, the Victim Rights Act is functionally a civil statute. The Act provides for a hearing to determine the amount of restitution, as was held in this case, and that the burden of proof in determining that amount is the civil one of preponderance of the evidence.[7] The State Attorney must prove the amount of the victim's loss, while the burden of demonstrating insufficient financial resources is on the defendant.[8]

B) Valuation of Natural Resource Damage

A philosophical question must next be confronted in our analysis. There will doubtless be those who question the very idea of setting a dollar value on a resource as unique as the Florida Keys Reef. It is the only reef system lying inside of the territorial limits of the continental United States. It is perhaps the chief economic and natural resource feature in Monroe County, drawing hundreds of thousands of visitors annually. How does one value such a unique treasure?

This philosophical question, though important to be raised, is easily refuted. When a human life is taken through the negligence of another, a dollar value as to that life is frequently reached in court. What resource is more precious as a human life?

Beyond the philosophical questions lies the swamp of actually seeking to come up with a figure. The various legal and economic methodologies which may be applied to value damages natural resources are numerous.[9] The Court, in response to numerous cases such as the one at Bar, and spurred on by the recent and well known

---

[5] F.S. 775.089(1)(a) (1984).

[6] Id.

[7] Id. at (7).

[8] Id.

[9] See generally Puerto Rico v. S.S. Zoe Colocotroni, 628 F.2d 652 (1st Cir. 1980), cert. denied 450 U.S. 412. As to the economic methodology, see, E. J. Yang, R. K. Dower and M. Menifrel, The Use of Economic Analysis in Valuing Natural Resource Damages. National Oceanic and Atmospheric Administration, Washington, D.C. (1984). Valuation standards can be mandated by statute, see e.g. 43 U.S.C., § 1813 reduced to a table adopted under rule-making authority. Florida, for instance pursuant to statute, F.S. 403.141 (3) (1984), maintains such a table of values for natural resource damage cases involving pollution, F.A.C. Ch. 17-11.01 (1984). Such values are presumed to be correct in the absence of proof to the contrary. Fla. Dept. of Pollution Control v. International Paper Co., 329 So.2d 5 (Fla. 1926). No valuation is set for coral in the Code.

22

grounding of the M/V Wellwood on Molasses Reef, set out to try to do just that—achieve a dollar figure for the reef.

Working in conjunction with James S. Mattson, Ph.D., a lawyer and marine scientist, the methodology and results are published in A. DeFoor and J. Mattson, "Natural Resource Damages: Restitution as a Mechanism to Slow Destruction of Florida's Natural Resources", *Florida State University Journal of Land Use and Environmental Law*, Vol. 1, Issue (3) (1985). The research produced a economic value reduced to present value of $2833.00 per square meter (or $263.27) per square foot).[10] Rather than duplicate the methodology in these pages, the Court merely notes that it adopts the methodology and valuation reflected in the article. The Court provided counsel for the State and the Defendant with a copy of the article, indicated its proposed intention to rely on the research, and provided ample time for the parties to respond.[11] No criticism was forthcoming.

## FINDINGS OF FACT

Against this backdrop, we turn to the damages in this case. The testimony of the State's expert was that there was approximately one square meter of total destruction and twenty square meters of partial destruction (found to be moderate in nature; consisting of 25 percent or less of colonies effected) of hard coral. This yields a total calculation of damaged areas at 6 square meters. Soft coral damage was essentially discounted, due to its rapid rate of recovery. Hard corals, according to the expert's testimony, will be slow to recover (up to 200 years). These damages are further subject to the synergistic effects of damage which compound as they are incurred on a systemic basis throughout the coral reef system. The testimony of the defense expert is considerably lower and he offered a plotted graph in which he calculated the damages at 6 square feet.

The Court having considered the testimony of both experts, adopts defendant's experts opinion and calculates the area of total destruction at 6 square feet, noting that the defense expert put a great deal of precision into his plotting and calculation of the size of the areas of destruction. The Court rejects the argument of the defense that the State was contributorily negligent in not making this reef. Applying the figures previously reached, of $263.17 per square foot of hard coral the Court reaches a figure of $1579.02 in loss.

---

[10] This approach places an overall value of $1.6 billion to the reef within the bounds of the Pennekamp Park/Key Largo National Marine Sanctuary complex. By this approach Molasses Reef alone is valued at $400 million.

[11] F.S. 90.204 (1980).

From this figure the defendant would seek to deduct sums which he has expended in the community as a result of his charter, and as a result of his unfortunate mishap:

$2360.00 Chartering fees; $2010.00 Legal fees; $150.00 Boat towing, and $981.74 Vessel repairs.

The Court finds that the Charter fee is not allowed as it is already theoretically calculated into the base which yields the value of the reef.[12] Legal fees are not allowed, as a matter of public policy, in accordance with the American Rule concerning legal fees. Should the wrongdoer profit from his transgression? If his legal fees exceeded the damages, could he then become a plaintiff?

Since the methodology used to calculate the value of the reef is predicated upon the present day economic value of the system to the citizens of the State, the Court will allow the $150.00 in vessel towing fees since this sum did enter the economic lifeblood of the community, and would not have absent the grounding.[13] The sum of $981.74 gave the Court some pause on a similar theory, but the Court notes that, unlike the towing charge, it represents restitution for damages inflicted within the economic community (to the vessel), and is thus dissimilar. It will not be allowed.

Accordingly the Court sets the restitutionary value in this cause at $1429.02. As previously noted, F.S. 775.089(1)(a) allows restitution to be either monetary or non-monetary in nature. The Court notes that monetary restitution in this case would accrued to the General Fund of the State of Florida, with little, if any, prospect of its redirection to the benefit of the damaged resource.[14]

Therefore, the Court orders that restitution shall be non-monetary in nature and, equal in value to the sum of $1429.02, and shall be in the form of anchoring buoys, marker buoys, educational materials or other materials which shall be provided by the defendant to the Pennekamp Park in a fashion to be arranged between counsel for the defendant and

---

[12] A. DeFoor and J. Mattson, "Natural Resource Damages: Restitution As A Mechanism to Slow Destruction of Florida's Natural Resource, *Florida State Journal of Land Use and Environmental Law*, Vol I, Issue 3 (1985).

[13] The Court gratuitously notes that in a maritime context involving limitation of plaintiff's liability the Court would not find the same policy considerations to be present, and would not feel compelled to allow such a set off.

[14] F.S. 216.292 (1984). Legislation has been proposed to create regional trust funds to administer environmental restitution and mitigation funds, directed at site specific expenditures. *See* DeFoor and Mattson, note 11, *supra*.

the Park Manager within 60 days. If the parties are unable to reach a satisfactory arrangement, a further hearing shall be held to determine the nature and extent of non-monetary restitution to be provided in this cause, or alternatively to order monetary restitution payable to the General Fund of the State. Because the Court has ordered non-monetary restitution the Court shall withhold the issuance of execution until and unless monetary restitution is ordered.

## JUDGMENT AND SENTENCE

This cause, came on for a Trial by Court finding the Defendant Guilty of the charge of

REMOVAL OR DESTRUCTION OF NATURAL FEATURES, CORAL & MARINE LIFE, in violation of Florida Administrative Codes, Section 16D-2.11(2)(a)&(b) as prohibited by and in violation of Florida Statute 258.083(2), and it appearing that you are not likely again to engage in a criminal course of conduct, and that the ends of justice and the welfare of society do not require that you should presently be adjudged guilty and suffer the penalty authorized by law;

Now, therefore, it is ORDERED and ADJUDGED that the adjudication of guilty is hereby withheld;

Based upon the defendant's completion of six (6) months probation Court supervised non-reporting with the following terms and conditions:

1) To pay a fine of $100.00 in Court costs.

2) To attend and complete a Coast Guard approved Boating Safety Course.

3) Restitution to the victim, pursuant to F.S. 77.089(1)(a) as outlined in separate order.

4) Aforesaid probation shall automatically terminate upon completion of terms 1-3, above.

DONE and ORDERED in Chambers, at Plantation Key, Monroe County, Florida on this 16th day of December, 1985.